```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2
     ------------------------------------------------------------
 3                                    )
     United States of America,        )   File No. 20-cr-160
 4                                     )            (NEB-LIB)
               Plaintiff,             )
 5                                     )
     vs.                              )   St. Paul, Minnesota
 6                                     )   September 17, 2020
     Benjamin Joseph Roggenbuck,      )   1:04 p.m.
 7                                     )
                                       )
 8             Defendant.             )
                                       )
 9   ------------------------------------------------------------

10              BEFORE THE HONORABLE NANCY E. BRASEL
                 UNITED STATES DISTRICT COURT JUDGE
11
                (CHANGE OF PLEA HEARING VIA ZOOM)
12

13   APPEARANCES VIA ZOOM
      For the Plaintiff:        U.S. Attorney's Office
14                              CHELSEA A. WALCKER, AUSA
                                600 U.S. Courthouse
15                              300 South Fourth Street
                                Minneapolis, Minnesota 55415
16
      For the Defendant:        Chestnut & Cambronne
17                              BRIAN N. TODER, ESQ.
                                Suite 1700
18                              100 Washington Avenue South
                                Minneapolis, Minnesota 55401
19
      Court Reporter:           ERIN D. DROST, RMR-CRR
20                              Suite 146
                                316 North Robert Street
21                              St. Paul, Minnesota 55101

22

23

24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer.
```

```
 1                    P R O C E E D I N G S

 2                      IN OPEN COURT

 3                       (VIA ZOOM)

 4       (Defendant present)

 5              THE COURT:  Let's go on the record.  And I will

 6       have Ms. Wegner call the case, and then I'll have her also

 7       have you enter appearances, beginning with the Government.

 8              Ms. Wegner, are you there?

 9              THE COURTROOM DEPUTY:  I am, Judge.  This is the

10       United States of America v. Benjamin Joseph Roggenbuck,

11       Criminal Case No. 20-cr-160.

12              Counsel, will you state your appearances for the

13       record.

14              MS. WALCKER:  Good afternoon, Your Honor.  Chelsea

15       Walcker appearing on behalf of the United States.

16              THE COURT:  Good afternoon.

17              MR. TODER:  Good afternoon, Your Honor.  Brian

18       Toder representing the Defendant, who is present.

19              THE COURT:  Thank you.

20              Mr. Roggenbuck, is it Roggenbuck or Roggenbuck,

21       sir?

22              THE DEFENDANT:  I prefer Roggenbuck.

23              THE COURT:  All right.  Fair enough.  I wanted to

24       make sure, first of all, that you can hear me, and it sounds

25       like you can, and can see me as well.  I -- and you are able
```

 1    to hear everyone else.  And I have the court reporter

 2    present and probation.

 3              So now I want to talk to you about making sure

 4    that you are able to consult with your attorney.  I know

 5    that is difficult in COVID times.  And Mr. Toder has been

 6    consulting with you via video conference; is that correct?

 7              THE DEFENDANT:  Correct.

 8              THE COURT:  And have you been able to consult with

 9    him when you wish?

10              THE DEFENDANT:  Yes.

11              THE COURT:  And we are able here, by Zoom, to put

12    you in a separate chatroom, if you wish, to talk with him at

13    any point during the hearing.  So I wanted to make sure that

14    you know that; that if there's anything that you need during

15    the hearing, you can have a separate channel with Mr. Toder

16    and you can have that discussion.  Does that make sense?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Mr. Toder, have you been having --

19    have you had any difficulty communicating with your client

20    leading up to these proceedings?

21              MR. TODER:  I have not.

22              THE COURT:  Okay.  The first thing I want to do

23    here, before we get to the plea that I understand that

24    Mr. Roggenbuck wants to make, is to make a record about our

25    being here by video conference rather than all of us in

1      person, which I would, of course, prefer.

2                In March of this year, Congress passed the CARES

3      Act, and that allows federal courts that have been

4      materially affected by COVID-19 to authorize the use of

5      video/telephone conferencing for certain criminal

6      proceedings, and that includes a change of plea.  So

7      specifically felony pleas and felony sentencings may be

8      conducted by video conference if three conditions are met,

9      and I just want to go through those.  And then,

10     Mr. Roggenbuck, I'm going to ask you about your consent to

11     the video conference as well.

12               The first condition is that the Judicial

13     Conference of the United States finds that emergency

14     conditions with respect to COVID-19 will materially affect

15     the functioning of federal courts.  They have made that

16     finding on March 29th of this year, and it has not yet been

17     lifted.

18               The second is that the chief judge of a district

19     finds that felony pleas and sentencings cannot be conducted

20     in person without seriously jeopardizing health and safety.

21     And on March 30th of this year, our chief judge issued

22     General Order No. 5 -- that has been superseded by a number

23     of general orders -- finding that felony pleas and

24     sentencings cannot be conducted in person without seriously

25     jeopardizing health and safety unless a number of conditions

1      are put into place that are protections.

2              So I will say, Mr. Roggenbuck, that we have, since

3      March, put in a protection so that we can do this hearing in

4      person with added protections that are included in our

5      courtroom.  We have a number of protocol.  It does, however,

6      mean more delay.  But I want to make sure when I go through

7      the consent with you that you understand that there is now,

8      where there wasn't in March, a different option that you

9      could choose.

10             The third condition is that the district judge in

11     a particular case, and that's me in this case, finds for

12     specific reasons that the plea or sentencing cannot be

13     further delayed without serious harm to the interests of

14     justice.  And as I mentioned, if we were to do this in

15     person with the COVID protocol in place, it would mean some

16     delay.

17             I am going to make this finding in this case

18     because it is my understanding, based on information from

19     the attorneys, that further delay will harm the interests of

20     justice because, Mr. Roggenbuck, you wish to move the case

21     forward.  It also means that you will not have to undergo

22     quarantine and isolation procedures, which would occur if

23     you were to come to the courthouse.  And it will minimize

24     interactions that will -- that could introduce unnecessary

25     exposure to COVID-19.

1          So if you all agree with that, the Court agrees

2    that delaying the sentencing hearing until normal court

3    operations resume or until we can get a slot for a plea that

4    is in person would prejudice your ability to make arguments

5    regarding sentencing.

6          So, Mr. Roggenbuck, do you have any questions

7    about the video conference and the operation of video

8    conferencing?

9          THE DEFENDANT:  No, I do not.

10          THE COURT:  All right.  And are there any

11    questions from the Government?

12          MS. WALCKER:  No, Your Honor.  I believe this

13    satisfies the record with regard to the waiver needed.

14    Thank you.

15          THE COURT:  Mr. Toder?

16          MR. TODER:  I concur.

17          THE COURT:  And so, again, Mr. Roggenbuck, you do

18    have the right to appear in person, although it would be

19    delayed until it's safe to do so.  Have you discussed your

20    rights with your attorney in that regard?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And he's gone over your rights to

23    appear in person?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And are you satisfied that you

1     understand your rights and are willing to give up being

2     present in court?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  And so you consent to the video

5     conference?

6                   THE DEFENDANT:  Yes.

7                   THE COURT:  Okay.  Again I want to emphasize that

8     if during this hearing you hear something you don't agree

9     with or you want to talk with your attorney, let me know

10    that.  I know it's a little more frustrating since you're

11    not sitting right next to your attorney.  So after you hear

12    an argument and you want to talk to your lawyer, just raise

13    your hand, we'll take a break, and then you can talk

14    privately with Mr. Toder without disclosing anything that

15    might be protected by privilege.  Do you understand that?

16                  THE DEFENDANT:  I do.

17                  THE COURT:  All right.  So now I want to move

18    forward with the hearing itself.  My understanding is that

19    you are here today because you've decided to enter a guilty

20    plea in this case pursuant to a plea agreement with the

21    Government; is that correct?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Before I can accept your plea, I need

24    to go over a number of things with you, and it means asking

25    you a number of questions to ensure that you are making a

1      voluntary and informed decision about whether to plead

2      guilty.  You must answer those questions truthfully and

3      under oath; so I'm going to place you under oath just as if

4      you were in the courtroom here.  Would you raise your right

5      hand.

6                  (Defendant sworn.)

7                  THE COURT:  Thank you.  Can you state your full

8      name for the record?

9                  THE DEFENDANT:  Benjamin Joseph Roggenbuck.

10                 THE COURT:  And can you spell it?

11                 THE DEFENDANT:  The last name is

12     R-o-g-g-e-n-b-u-c-k.

13                 THE COURT:  All right.  You understand that you

14     are under oath?

15                 THE DEFENDANT:  I do.

16                 THE COURT:  And because you are under oath, if you

17     say anything that is false at today's hearing, you could be

18     prosecuted for the separate crime of perjury and the

19     Government can use against you any statements that you give

20     under oath that are false.  It's important that you be

21     truthful in everything that you say today.  Do you

22     understand that?

23                 THE DEFENDANT:  Yes.

24                 THE COURT:  Again, if you wish to talk to your

25     attorney, you let me know today.

1          And if there's anything that I say today that you

2    don't hear or that you don't understand, I want you to tell

3    me so that you can repeat it or -- so that I can repeat it

4    or make it clearer to you.  I don't want you to answer a

5    question that confuses you or that you do not hear.  If you

6    tell me that you understand something, I'm going to believe

7    that you really understand it.  Does that make sense?

8          THE DEFENDANT:  Understood.

9          THE COURT:  The most important thing for you to

10   know here today is that once you plead guilty, if you do so,

11   and I accept your plea, you will not be able to withdraw

12   except under very limited circumstances.  So if you need

13   anything answered, I want that to be answered before you

14   give your plea and not after because then it will be too

15   late.  Do you understand that?

16         THE DEFENDANT:  I do.

17         THE COURT:  Also, just because you've told me

18   right now that you intend to plead guilty and that's what

19   you want to do does not mean that's what you have to do at

20   the end of the hearing.  If at any point today you change

21   your mind before you enter that plea, you can do that.  It

22   isn't too late until you plead guilty and I accept your

23   plea.

24         Can I ask you just a few questions about yourself?

25   The first is whether you've ever used a different name than

1      Roggenbuck.

2                  THE DEFENDANT:  No, I have not.

3                  THE COURT:  Okay.  And how old are you, sir?

4                  THE DEFENDANT:  I am currently 38.

5                  THE COURT:  And how far did you go in school?

6                  THE DEFENDANT:  Some college.

7                  THE COURT:  Okay.

8                  THE DEFENDANT:  I was two classes away from

9      getting an associate's.

10                 THE COURT:  Where did you go to college?

11                 THE DEFENDANT:  Northland -- NCTC in Thief River

12     Falls.

13                 THE COURT:  Okay.  Did you go to high school in

14     Thief River Falls as well?  I'm just looking at your bond

15     report to see if that tells me.

16                 THE DEFENDANT:  I did.

17                 THE COURT:  You did.  Okay.  And you got a high

18     school diploma?

19                 THE DEFENDANT:  A GED actually.

20                 THE COURT:  A GED.  Okay.

21                 And are you a United States citizen?

22                 THE DEFENDANT:  I am.

23                 THE COURT:  Any trouble speaking or understanding

24     the English language?

25                 THE DEFENDANT:  No.

1          THE COURT:  Okay.  And how about able to read

2     fairly well?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  And I recognize that you're in

5     custody and so this is unlikely; nevertheless, are you now

6     under the influence of alcohol?

7          THE DEFENDANT:  No.

8          THE COURT:  Any alcohol within the last 24 hours?

9          THE DEFENDANT:  No.

10          THE COURT:  And how about any drugs or medication?

11          THE DEFENDANT:  No.

12          THE COURT:  All right.  Drugs or medication in the

13     last 24 hours?

14          THE DEFENDANT:  Nothing, no.

15          THE COURT:  Are you generally in good health?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And are you suffering from any

18     physical pain?

19          THE DEFENDANT:  No.

20          THE COURT:  Have you ever received a mental health

21     diagnosis?

22          THE DEFENDANT:  No.  The closest I've gotten was a

23     personality profile that I had to do to enter college.

24          THE COURT:  Okay.

25          THE DEFENDANT:  I'm not sure how well that

1    actually parallels.

2                THE COURT:  Sure.  And that was not -- it wasn't a

3    diagnosis of anxiety or depression or anything like that?

4                THE DEFENDANT:  No.

5                THE COURT:  That was a personality profile?

6                THE DEFENDANT:  Yeah.

7                THE COURT:  Okay.  Are you able to think clearly

8    here today?

9                THE DEFENDANT:  Yes.

10                THE COURT:  Okay.  And you're represented here by

11    Mr. Toder.  Have you fully discussed the charges against you

12    with him?

13                THE DEFENDANT:  Yes.

14                THE COURT:  And have you told him everything that

15    you want him to know about this case?

16                THE DEFENDANT:  Yes.

17                THE COURT:  And are you fully satisfied with the

18    services that you've received from Mr. Toder?

19                THE DEFENDANT:  Yes.

20                THE COURT:  Mr. Toder, let me ask you whether you

21    have had sufficient time to investigate the law and facts of

22    Mr. Roggenbuck's case.

23                MR. TODER:  I have.

24                THE COURT:  And are you satisfied that he

25    understands the charges against him and the range of the

1    punishments that he faces?

2              MR. TODER:  I am.

3              THE COURT:  And do you believe that he is

4    competent to enter a guilty plea today?

5              MR. TODER:  Yes.

6              THE COURT:  And have you had, even with COVID,

7    sufficient time to communicate with him while he has been

8    incarcerated?

9              MR. TODER:  I have.

10              THE COURT:  Okay.  Mr. Roggenbuck, the law

11    requires me to describe the nature of the charges against

12    you.  I'm going to do that now.  You've been charged with

13    the following:  Counts 1 and 2 of the Indictment charge you

14    with production and attempted production of child

15    pornography in violation of 18 U.S.C. 2251(a) and (e).  Do

16    you understand that those are the charges against you in

17    Count 1 and 2 of the Indictment?

18              THE DEFENDANT:  Yes.

19              THE COURT:  The Indictment also contains other

20    counts.  Mr. Toder, does the Defendant waive the reading of

21    those remaining charges?

22              MR. TODER:  We waive.  We so waive.

23              THE COURT:  Thank you.

24              Mr. Roggenbuck, the next thing I want to go over

25    with you is the rights that you would be giving up if you

1    pled guilty here today.  So I believe as you know, you give

2    up a number of rights, including that right to a jury trial.

3    They are important rights under the Constitution.  I need to

4    go through them with you to make sure you understand them

5    and that you -- you may make an informed decision about

6    whether to give them up.

7         The first is that you have the right to continue

8    to plead not guilty to the charges against you.  So that's

9    what you've done.  And you have the right to continue to do

10   that, to persist in that plea.

11        You have the right to be represented by an

12   attorney at every stage of the proceeding; before trial,

13   during trial, and after trial.  That can be an attorney that

14   you hire or an attorney who is appointed to represent you if

15   you qualify.  Do you understand that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  You have the right to file pretrial

18   motions seeking information from the Government or seeking

19   to suppress evidence.  In this case you have done so and

20   they have been withdrawn, but you do have the right to

21   persist in those motions and that would be a right that you

22   are giving up in order to plead guilty.  Do you understand

23   that?

24        THE DEFENDANT:  (Nods head.)

25        THE COURT:  Was that a yes?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Sorry.  I didn't hear it out loud.

3    Thank you.

4           And then let's talk about your trial.  You have

5    the right to go to trial.  If you continue to plead not

6    guilty, that trial would consist of a jury of 12 citizens of

7    this district.  It's the right to a speedy trial, which

8    means that we can have it sooner rather than later, a few

9    weeks rather than months or years.  And even with COVID, we

10   are going forward with jury trials.  So I want to make sure

11   that you are not giving up your right to a trial just

12   because you think you won't get one under COVID.  Do you

13   understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  Okay.  At trial you're presumed

16   innocent.  I instruct the jurors that they must presume

17   you're innocent.  The burden is always on the Government to

18   prove your guilt and not on you to prove your innocence.

19   And not only is it on the Government to prove your guilt,

20   but they must do so according to a very high standard.  They

21   must prove your guilt beyond a reasonable doubt.  And unless

22   all of them are convinced of your guilt beyond a reasonable

23   doubt, they have to acquit you.  Do you understand that?

24          THE DEFENDANT:  I do.

25          THE COURT:  If we did go to trial, the Government

1    seeks to prove your guilt by calling witnesses who'd come to

2    Court and testify against you.  You have the right to

3    confront those witnesses, that is, to sit in court, to hear

4    them testify.  Your attorney has the right to cross-examine

5    those witnesses, to ask them questions to try to expose

6    weaknesses in their testimony.  Do you understand that?

7              THE DEFENDANT:  I do.

8              THE COURT:  You have the right to remain silent at

9    trial.  No one can force you to take the stand and testify.

10   If you chose not to testify, your silence cannot be used

11   against you.  And if you wanted me to, I would instruct the

12   jurors that they could not take into account your silence

13   when they consider their decision whether you had been

14   proven guilty.  Do you understand that?

15             THE DEFENDANT:  I do.

16             THE COURT:  On the flip side, you have every right

17   to take the stand and testify at trial, although you do not

18   have to.  You also have the right to call witnesses to

19   testify on your behalf, to ask me for a subpoena, that is an

20   order to bring witnesses here who otherwise didn't want to

21   testify on your behalf, basically to force witnesses to come

22   here and testify.  You have the right to do all of those

23   things.  Do you understand that?

24             THE DEFENDANT:  I do.

25             THE COURT:  And if you did those things, if you

1    testified, if you called witnesses, if you asked me for a

2    subpoena to bring them here, it never changes the burden of

3    proof, which is always on the Government to prove your guilt

4    beyond a reasonable doubt.  You're still not obligated to

5    prove anything.  Do you understand that?

6              THE DEFENDANT:  I do.

7              THE COURT:  And at trial, the verdict, if it were

8    to be guilty, must be unanimous.  So you can't be convicted

9    of any charge unless every single member of the jury finds

10   that you are guilty of the charge beyond a reasonable doubt.

11   Do you understand that?

12             THE DEFENDANT:  I do.

13             THE COURT:  All right.  And the last right I want

14   to go over is your right to appeal.  If you go to trial and

15   you're convicted, you have the right to appeal that

16   conviction.  If you plead guilty, you give up the right to

17   appeal your conviction, not necessarily your sentence, but

18   your conviction.  Do you understand that?

19             THE DEFENDANT:  I do.

20             THE COURT:  Do you have any questions about any of

21   those rights?

22             THE DEFENDANT:  No.

23             THE COURT:  Ms. Walcker, anything further on the

24   rights?

25             MS. WALCKER:  No, Your Honor.

1            THE COURT:  Mr. Toder?

2            MR. TODER:  No, Your Honor.

3            THE COURT:  The law also requires me to go through

4     the maximum possible penalties.  These are the statutory

5     penalties.  They aren't the sentencing guidelines.  I'm

6     going to have Ms. Walcker and Mr. Toder go through the

7     sentencing guidelines when they go over the plea agreement.

8            But if you plead guilty to Counts 1 and 2, you're

9     facing a possible penalty of a mandatory minimum of

10    15 years, a maximum of 30 years' imprisonment.  If there

11    were to be a prior, and I know you've gone over this with

12    your attorney, but if there were to be a prior conviction on

13    your record related to sexual assault or sexual abuse, these

14    penalties could increase.  There's a potential for a 60-year

15    term, and I think the plea agreement addresses that as well.

16           In addition, the statute calls for a supervised

17    release term of at least five years, a fine of up to

18    $250,000, a $5,000 payment to the Domestic Trafficking

19    Victims' Fund, and a special assessment of $100 per count.

20    In addition, if you plead guilty to the offenses, there is

21    restitution.  Under the Mandatory Victim Restitution Act,

22    I'm required to order you to pay restitution to the victims

23    of your crime.  I understand the plea agreement addresses

24    that as well.  I also will order you to forfeit property

25    that is described in the forfeiture section of the

1      Indictment on page 4 of the Indictment.  And, finally, I

2      could order you to pay the costs of prosecuting you.  Do you

3      understand all of that?

4              THE DEFENDANT:  I do.

5              THE COURT:  Okay.  I could also order that the

6      sentences for the counts on which you are to be convicted

7      could be served consecutively, one after the other.  So if

8      you plead guilty to both Count 1 and 2, I could order you to

9      serve maximum terms on each count to be served

10     consecutively.

11             Ms. Walcker, is that how you understand this as

12     well?

13             MS. WALCKER:  Yes, Your Honor.

14             THE COURT:  Mr. Toder, have you gone over that

15     with your client?

16             MR. TODER:  We have.  I have.

17             THE COURT:  Because a maximum consecutive would be

18     a maximum of 60 years.  Mr. Roggenbuck, do you understand

19     that?

20             THE DEFENDANT:  I do.

21             THE COURT:  Okay.  I should also warn you that

22     because you are a United States citizen and because you have

23     been charged with a felony, if you plead guilty, you may

24     lose your right to vote, to hold public office, to serve on

25     a jury, and possess any type of gun or firearm.  Do you

1    understand that?

2                    THE DEFENDANT:  I do.

3                    THE COURT:  And, in addition, because you have

4    been charged with a sex offense, if you plead guilty, you'll

5    be required to register as a sex offender and keep your

6    registration current in this state or any other state where

7    you live, work, or are a student.  And if you knowingly fail

8    to register, that's a separate federal crime.  Do you

9    understand that?

10                   THE DEFENDANT:  I do.

11                   THE COURT:  Okay.  And then, finally, if you plead

12   guilty, although this is not really the province of the

13   Court, I need to tell you that you may not be eligible to

14   receive certain financial benefits from the Government.  Do

15   you understand that?

16                   THE DEFENDANT:  I -- yeah.

17                   THE COURT:  Okay.  All right.  I want to talk a

18   bit about supervised release.  The law requires me to do so.

19   Supervised release is what happens to you after you're

20   released from prison.  You go to prison, you serve your

21   time, and then you're placed on supervised release and I

22   determine what conditions that's under.  So it's sort of

23   like being on probation.

24                   If you violate the terms of that supervised

25   release, you can be sent back to prison for the entire

1    amount of the supervised release without crediting that time

2    that you've been out.  Does that make sense to you?

3              THE DEFENDANT:  It does.

4              THE COURT:  Okay.  At sentencing I would decide

5    the terms of the supervised release with the input of

6    probation and the attorneys.

7              All right.  Now I want to turn to the plea

8    agreement, sir.  I do have a copy -- a signed copy of the

9    plea agreement.  I'm going to ask Ms. Walcker to go over it;

10   and, Mr. Toder, you can fill in any summary that you wish.

11             Let me ask you first, Mr. Roggenbuck, you've --

12   have you read the plea agreement?

13             THE DEFENDANT:  I have.

14             THE COURT:  And has Mr. Toder gone through it

15   carefully with you?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And has he answered all of your

18   questions?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And do you understand its terms?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Ms. Walcker, I'd like you to walk

23   through the plea agreement, at least those portions that we

24   haven't already covered through my colloquy with

25   Mr. Roggenbuck.

1          The reason that I do that, Mr. Roggenbuck, have

2     the attorneys go through it, is that, as I'll tell you at

3     the end of this, I'm not a party to it.  You signed it.

4     Your attorney signed it.  Ms. Walcker signed it.  It is

5     between all of you.  And so while it makes some predictions

6     about what the sentencing guidelines say and it will make

7     some recommendations, ultimately the attorneys will make

8     recommendations to me, in the end, since I'm not a party to

9     the plea agreement, I'm not bound by it.  Does that make

10    sense to you?

11          THE DEFENDANT:  Understood.

12          THE COURT:  Thank you.

13          Ms. Walcker, you may go forward.

14          MS. WALCKER:  Thank you, Your Honor.

15          Mr. Roggenbuck, good afternoon.  I'm going to go

16    through the key terms of the agreement with you now, not

17    word for word, but I want to make sure you understand its

18    key terms.

19          Mr. Roggenbuck, you understand that you are

20    agreeing to plead guilty to both Counts 1 and 2 of the

21    Indictment as well as two criminal sexual conduct counts in

22    the Pennington County prosecution as outlined in the plea

23    agreement and in Exhibit A attached to the plea agreement;

24    is that right?

25          THE DEFENDANT:  Yes.

1          MS. WALCKER:  And following your federal

2     sentencing, Pennington County will then dismiss the

3     remaining charges pending against you with prejudice.  Do

4     you understand that?

5          THE DEFENDANT:  Yes.

6          MS. WALCKER:  Turning to the sentencing

7     guidelines, these are sentencing guidelines.  They are not

8     mandatory, and they are merely advisory on the Court.

9          The base offense level is agreed to be Level 32

10    for Count 1.  There are additional specific offense

11    characteristics.  There's four levels because the offense

12    involved a prepubescent minor, two levels because the

13    offense involved the commission of a sexual act, and two

14    levels because you are related to the minor involved in the

15    offense.  Do you understand all of that?

16         THE DEFENDANT:  Yes.

17         MS. WALCKER:  Okay.  And as to Count 2, you are

18    also looking at Level 32; four levels because the offense

19    involved a prepubescent minor, four levels because the

20    material portrays a toddler, two levels because you

21    knowingly engaged in distribution, and two levels because

22    you are related to the minor involved.  Do you understand

23    all of that, sir?

24         THE DEFENDANT:  Yes.

25         MS. WALCKER:  Now, to handle two separate

```
 1    offenses, the adjusted offense level for Count 1 is 40 and

 2    Count 2 is 44.  Two units are added, so we're looking at a

 3    combined offense level of 46.  However, because there is a

 4    pattern of activity involving prohibited sexual conduct, the

 5    adjusted offense level is 51.  There is a three-level

 6    downward adjustment for acceptance of responsibility.  The

 7    Criminal History Category is Level I.  And so an adjusted

 8    offense level of 48 is reduced to an offense level of 43.

 9         So the guidelines would recommend life

10    imprisonment, but that would be capped by the maximum

11    sentence of 60 years.  The guidelines range -- fine range is

12    $50,000 up to $500,000.  The guideline supervision is five

13    to life of supervised release.  The parties are agreeing to

14    advocate for a term of imprisonment within the range of 240

15    and 540 months in prison.

16         You understand that the mandatory minimum sentence

17    is 15 years of imprisonment for each count, while your

18    maximum sentence is 30 years of imprisonment for each count;

19    and the Court, in its discretion, could sentence you to run

20    consecutively for each count.  Do you understand that, sir?

21         THE DEFENDANT:  Yes.

22         MS. WALCKER:  The parties are also agreeing to

23    jointly recommend lifetime supervision.

24         You are also agreeing to recommend that the Court

25    order you to have no contact with either Minor A or Minor B
```

1    or their immediate family members at any point during your

2    incarceration.

3              You are also agreeing to recommend that the Court

4    order that you have no contact with either Minor A or B or

5    their immediate family members while on supervised release

6    unless specifically approved by probation.

7              The parties are agreeing to jointly recommend that

8    any sentence imposed run concurrently with any later-imposed

9    sentence in Pennington County and to jointly recommend that

10   you serve your concurrent federal and state sentences in

11   federal prison.  Do you understand that, Mr. Roggenbuck?

12             THE DEFENDANT:  Yes.

13             MS. WALCKER:  The parties are agreeing to argue

14   for whatever sentence they believe is appropriate within the

15   agreed-upon sentencing guidelines range.  Do you understand

16   that, Mr. Roggenbuck?

17             THE DEFENDANT:  Yes.

18             MS. WALCKER:  Do you also understand that all of

19   these stipulations are binding on the parties but not the

20   Court?

21             THE DEFENDANT:  Yes.

22             MS. WALCKER:  In other words, the sentencing

23   guidelines are advisory, and their application solely falls

24   within the Court's discretion, which means the Court will

25   make its own independent determination regarding the

1     guideline factors and Criminal History Category.  And just

2     because the Court may reach a different determination than

3     what the parties agreed upon, that doesn't mean that you can

4     withdraw from the agreement.  Do you understand that?

5             THE DEFENDANT:  Understood.

6             MS. WALCKER:  Okay.  I'm going to go over just a

7     few other key provisions.

8             Restitution.  You understand and agree that, by

9     statute, the Court is required to order you to make

10    restitution to the victims of your crimes of production of

11    child pornography, and that the Court will order you to pay

12    restitution to Minors A and B in the amount of at least

13    $35,000 each?

14            THE DEFENDANT:  I do.

15            MS. WALCKER:  And by statute, you agree to pay

16    restitution to any individual whose child pornography image

17    or video you possessed, distributed, received, trafficked or

18    produced as determined by the course of the investigation or

19    by the National Center For Missing and Exploited Children?

20            THE DEFENDANT:  It's understood.

21            MS. WALCKER:  And that amount of restitution will

22    be determined under statute based on the full amount of the

23    victim losses, and that under statute, that amount will be

24    no less than $3,000 per individual.  Do you understand that,

25    Mr. Roggenbuck?

1          THE DEFENDANT:  I do.

2          MS. WALCKER:  And there is no agreement with

3     respect to an amount of additional restitution, but you

4     understand that the Court may order you to make restitution

5     to any victims of your crimes regardless of whether the

6     victim is named in the Indictment?

7          THE DEFENDANT:  I do.

8          MS. WALCKER:  Was that a "yes," sir?  I'm having

9     trouble hearing.

10         THE DEFENDANT:  Yes.

11         MS. WALCKER:  Thank you.  And you will fully

12    disclose to the U.S. Attorney's Office the existence and

13    location of any assets to which you have any right, title,

14    or interest?

15         THE DEFENDANT:  Yes.

16         MS. WALCKER:  You agree to assist the United

17    States in identifying, locating, returning, and transferring

18    assets of -- or any sort of form of payment of restitution

19    and fines ordered by the Court?

20         THE DEFENDANT:  Yes.

21         MS. WALCKER:  And you agree to fully and

22    truthfully complete a financial statement at least 30 days

23    before sentencing?

24         THE DEFENDANT:  Yes.

25         MS. WALCKER:  Turning to the forfeiture section,

1    you agree to forfeit all property traceable to Counts 1 and

2    2 of the Indictment.  The Government reserves the right to

3    seek the direct forfeiture of specific assets, a money

4    judgment forfeiture against you, and forfeiture of

5    substitute property under statute.  Do you understand that

6    as well, Mr. Roggenbuck?

7              THE DEFENDANT:  I do.

8              MS. WALCKER:  Turning to your appellate rights,

9    you are giving up your right to appeal if the sentence is

10   more [sic] than 45 years, and you would have a right to

11   appeal an illegal sentence.  You are agreeing to give up

12   your right to file a 2255 petition, except you're retaining

13   that right to later challenge the sentence based on

14   ineffective assistance of counsel.  Do you understand that?

15             THE DEFENDANT:  Yes.

16             MS. WALCKER:  The Government is also waiving its

17   right to appeal the sentence unless it is less than

18   20 years.

19             A collateral impact of this particular conviction

20   is a requirement to be registered as a sex offender under

21   federal law and the state law where you are residing.  Do

22   you understand that?

23             THE DEFENDANT:  I do.

24             MS. WALCKER:  And we can go over the factual basis

25   section next, but in terms of the key terms, Mr. Roggenbuck,

1    besides what's in this written agreement, has anyone made

2    any promises to you in an effort to persuade you to enter a

3    guilty plea in this case?

4              THE DEFENDANT:  No.

5              MS. WALCKER:  No one has threatened you or forced

6    you in any way to agree to this plea agreement?

7              THE DEFENDANT:  No.

8              MS. WALCKER:  Thank you, Mr. Roggenbuck.

9              Your Honor, I have nothing further in terms of the

10   key terms.  I'm happy to go over the factual basis when

11   Your Honor would like me to.  Thank you.

12             THE COURT:  Let's do that in a moment.

13             Mr. Toder, do you have anything further on the

14   plea agreement other than the factual basis?

15             MR. TODER:  No, Your Honor.

16             THE COURT:  Mr. Roggenbuck, as Ms. Walcker went

17   through the plea agreement, were those the terms of the plea

18   agreement as you understood them?

19             THE DEFENDANT:  I do; however, I did not see a

20   list of the items that were seized that I was agreeing to

21   forfeiture.  I know that some of those items were actually

22   not mine, but they were, in fact, XXXXXXXXXX and XXXXXXXX.

23             THE COURT:  Okay.  Let's go through those.

24   They'll -- I was going to ask Ms. Walcker and Mr. Toder

25   whether forfeiture would be wrapped up by sentencing, which

1    I would appreciate if it was.  The items are listed in the

2    Indictment.  And so the plea itself does not include an

3    agreement to forfeit all of those items.  That is -- it's a

4    separate order that I enter.  So what I'll do is ask

5    Ms. Walcker and Mr. Toder to put their heads together on

6    which are yours and which the Government wants to have you

7    forfeit and what Mr. Toder's arguments are, and then we can

8    decide that at sentencing.  Does that sound fair?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  All right.  So here we're not

11   going to decide any of that.

12             THE DEFENDANT:  Okay.  I was just a little

13   confused when she started talking about the forfeiture,

14   because that wasn't listed as -- itemized, so I wasn't sure

15   if that was --

16             THE COURT:  No, you're correct, it's not listed in

17   the plea agreement.  So I'll just expect the attorneys to

18   work that out with you and we'll address it at sentencing.

19             THE DEFENDANT:  Okay.  Thank you.

20             THE COURT:  Ms. Walcker?

21             MS. WALCKER:  Yes, Your Honor.

22             And just to be clear, the forfeiture,

23   Mr. Roggenbuck, that we're talking about is just the

24   specific electronic devices that were used in the offenses,

25   but I will work with your counsel and get a submission to

1        the Court.

2                    THE DEFENDANT:  Okay.  Thank you.

3                    THE COURT:  The Government has agreed,

4        Mr. Roggenbuck, that if you plead guilty to Counts 1 and 2,

5        that at sentencing they will dismiss Counts 3 and 4.  So

6        that's one promise that they have made.

7                    Other than what's contained in the plea agreement

8        and that promise to dismiss Counts 3 and 4, has the

9        Government or anyone else made any promises to you in an

10       effort to get you to plead guilty?

11                   THE DEFENDANT:  No.

12                   THE COURT:  I want to make sure you understand, as

13       I said before, that the Court isn't a party to the

14       agreement.  So the Government and your attorney have made an

15       agreement to recommend a particular range.  I want you to

16       know that -- and I tell everyone this -- I don't have to

17       accept that recommendation.  So as I sit here today, I've no

18       idea what a fair sentence would be for you.

19                   After this hearing today, assuming that you do

20       plead guilty, I will order a presentence investigation.  And

21       at the conclusion of that investigation, there's a report

22       that's prepared that advises me about your family and your

23       education and your employment history and your criminal

24       history and more of the specifics of this offense, and that

25       helps me to construct what I believe to be a fair sentence.

1          And so the point is that while your attorney and

2     the Government have done their best to estimate what a fair

3     sentence might be and what they might advocate for, it could

4     be that I won't recommend -- I won't accept those

5     recommendations.

6          In addition, the sentencing guidelines give me a

7     recommendation that may -- your attorney and the Government

8     have done their best to estimate what the guidelines will

9     recommend.  I, in the last instance, will need to decide

10    what the guidelines recommend, and then I decide whether to

11    follow those guidelines.  Does that make sense to you?

12          THE DEFENDANT:  Understood.

13          THE COURT:  Okay.  All right.  Normally the

14    parties have a right to appeal a sentence.  In your plea

15    agreement, you've agreed to give up the right to appeal your

16    sentence if the Court imposes a sentence at or below

17    540 months' imprisonment.  So you understand that if I

18    sentence you to 540 months' imprisonment or less, you'll not

19    be able to appeal or otherwise challenge the sentence except

20    as outlined in the plea agreement?

21          THE DEFENDANT:  I do.

22          THE COURT:  Okay.  And, likewise, the Government

23    may appeal the sentence if the term of imprisonment is less

24    than 20 -- 240 months.

25          As to the factual basis, before I can accept your

1    plea, sir, I must determine that there is a factual basis

2    for it, which is just another way of saying that I cannot

3    accept a plea from someone who is not actually guilty.  I

4    need to make sure that the Government has sufficient

5    evidence that you committed the crimes with which you have

6    been charged.  I'm going to ask Ms. Walcker to go through

7    that factual basis with you, and then Mr. Toder may follow

8    up.  I may have some questions as well.

9          Mr. Toder, is there anything that you would like

10    me to clarify for the record before we move on?

11          MR. TODER:  No, Your Honor.  We're ready.

12          THE COURT:  Thank you.

13          Ms. Walcker, you may go forward with the factual

14    basis.

15          MS. WALCKER:  Yes, Your Honor.

16          Mr. Roggenbuck, I am now going to go through what

17    is titled the Factual Basis section of the plea agreement,

18    which begins on page 2 of the document you signed, if you

19    want to follow along.

20          Do you have a copy of the plea agreement in front

21    of you today?

22          THE DEFENDANT:  I do not.

23          MS. WALCKER:  Okay.  Your Honor, with the Court's

24    permission, because Mr. Roggenbuck does not have a copy of

25    the plea agreement in front of him, I will share my screen

1     so that he can follow along with the plea agreement as I go

2     through the Factual Basis section of the plea with him.

3              THE COURT:  You may do so.

4              MS. WALCKER:  Thank you, Your Honor.

5              Mr. Roggenbuck, are you able to view the plea

6     agreement on the screen in front of you?

7              THE DEFENDANT:  I do.  Yeah.

8              MS. WALCKER:  Okay.  So I'm going to go through

9     this bit by bit, but I will begin on page 2 under the

10    heading Factual Basis.  So pages 2 through 4 list out a

11    substantial factual basis.  Have you had a chance to read

12    through all of that and talk through it with your lawyer?

13             THE DEFENDANT:  I did.

14             MS. WALCKER:  And is that all true and correct?

15             THE DEFENDANT:  Yes.

16             MS. WALCKER:  Okay.  So let me break it down a

17    little bit.  During the relevant time at issue, that is,

18    between approximately November 2012 and February 2020, you

19    were a resident of Minnesota; is that correct?

20             THE DEFENDANT:  Yes.

21             MS. WALCKER:  And your conduct at issue, that took

22    place here in Minnesota; right?

23             THE DEFENDANT:  Correct.

24             MS. WALCKER:  And you understand that in addition

25    to the federal case, you also have state charges pending

1    against you in Pennington County for criminal sexual conduct

2    in the first degree and possession of pornographic work

3    involving minors; is that right?

4            THE DEFENDANT:  Yes.

5            MS. WALCKER:  And the state charges relate to

6    allegations that you sexually abused two prepubescent minor

7    XXXXXXXXXXXXXXXXXX; is that correct?

8            THE DEFENDANT:  Yes.

9            MS. WALCKER:  Okay.  Let's turn to page 3.

10   Mr. Roggenbuck, if at any time you have trouble hearing me

11   or viewing the plea agreement in front of you, please do

12   speak up.

13           Mr. Roggenbuck, you had an encounter with law

14   enforcement in February of 2020; is that right?

15           THE DEFENDANT:  Yes.

16           MS. WALCKER:  And you understand that the

17   Minnesota Internet Crimes Against Children Task Force

18   received several cyber tip reports from the National Center

19   For Missing and Exploited Children; is that right?

20           THE DEFENDANT:  I was only aware of one tip, but

21   it's -- yeah.

22           MS. WALCKER:  Okay.  Well, do you have any reason

23   to believe that there were not more than one tip received by

24   the Minnesota Internet Crimes Against Children Task Force?

25           THE DEFENDANT:  Pennington County only advised me

1    of one tip.  That was it.

2            MS. WALCKER:  Okay.  Well -- and if you need time

3    with your counsel at any point, I just want to make sure

4    here that everything that we have in the agreement is

5    correct and that we have your agreement here.

6            Do you have any reason to believe that the

7    Government would not be able to prove that more than one tip

8    was received?

9            THE DEFENDANT:  I have no reason to believe that,

10   no.

11           MS. WALCKER:  Okay.  And those reports noted that

12   a Yahoo e-mail user had uploaded what appeared to be child

13   pornography, including what appeared to be newly produced,

14   that is to say, made images; is that right?

15           THE DEFENDANT:  Yes.

16           MS. WALCKER:  You understand that law enforcement

17   later learned that you were engaged in anal sex with XXXX

18   XXXXXXXXX, Minor A and Minor B, and using them to produce

19   child pornography; is that right?

20           THE DEFENDANT:  Yes.

21           MS. WALCKER:  And Minor A XX XXXX XXX, XXX XXX

22   XXXX XXXXX XXX at the time in February 2020; is that right?

23           THE DEFENDANT:  Yes.

24           MS. WALCKER:  And Minor B XX XXXX XXXXXXXX, XXX

25   XXX XXXXX XXXXX XXX at the time in February 2020; is that

1       right?

2                   THE DEFENDANT:  Yes.

3                   MS. WALCKER:  Okay.  And I'm not going to refer to

4       their names for privacy reasons.  I'm just going to refer to

5       them as Minor A and Minor B.

6                   THE DEFENDANT:  Thank you.

7                   MS. WALCKER:  Now, you understand that law

8       enforcement learned that between approximately November 2012

9       and February 2020, you used Minor A to create and attempted

10      to create child pornography; is that right?

11                  THE DEFENDANT:  Yes.

12                  MS. WALCKER:  And did you, in fact, do that?

13                  THE DEFENDANT:  There was pictures sent from one

14      of my e-mails to another one of my e-mails, and that is, I'm

15      told, distribution.

16                  MS. WALCKER:  Okay.  And, sir --

17                  THE DEFENDANT:  Yes.

18                  MS. WALCKER:  -- at any point if you need to speak

19      with your counsel, Mr. Toder, you can do so.

20                  THE DEFENDANT:  Yes.

21                  MS. WALCKER:  But for clarity of the record --

22                  THE DEFENDANT:  Yes.

23                  MS. WALCKER:  -- right now I'm just referring to

24      the images that you made involving Minor A.

25                  THE DEFENDANT:  Yes.

1          MS. WALCKER:  Do you understand that, sir?

2          THE DEFENDANT:  Yes.

3          MS. WALCKER:  Okay.  And Minor A, at the date

4    range that we're talking about, XX was between approximately

5    two and nine years old; is that right?

6          THE DEFENDANT:  Yes.

7          MS. WALCKER:  And during that time period you

8    produced, which is to say that you made, videos and images

9    of yourself with Minor A; is that right?

10          THE DEFENDANT:  Yes.

11          MS. WALCKER:  And they depict a range of sexual

12    conduct with Minor A, including you inserting your penis

13    into XXX anus and mouth; is that right?

14          THE DEFENDANT:  Yes.

15          MS. WALCKER:  Okay.  And at the time you created

16    those videos and images, you intended to do so; is that

17    right?

18          THE DEFENDANT:  Yes.

19          MS. WALCKER:  And as a housekeeping matter, you

20    agree that the images and videos you made were produced

21    using materials, electronics that had been mailed, shipped,

22    and transported in and affecting interstate and foreign

23    commerce; is that right?

24          THE DEFENDANT:  Yes.

25          MS. WALCKER:  Okay.  And you understand that law

1    enforcement learned that between approximately January of

2    2020 and February of 2020, you used Minor B to create and

3    attempted to create child pornography; is that right?

4             THE DEFENDANT:  Yes.

5             MS. WALCKER:  And did you, in fact, do that,

6    Mr. Roggenbuck?

7             THE DEFENDANT:  Yes.

8             MS. WALCKER:  And Minor B, in the date range we're

9    talking about, XXX XXX XXXXX XXXXX XXX; is that right?

10            THE DEFENDANT:  Yes.

11            MS. WALCKER:  And during that time period, you

12   made images of yourself with Minor B; is that right?

13            THE DEFENDANT:  Yes.

14            MS. WALCKER:  Those images depict a range of

15   sexual conduct with Minor B, including you inserting your

16   penis into XXX anus and depicting XXX exposed genitals; is

17   that correct?

18            THE DEFENDANT:  Yes.

19            MS. WALCKER:  And you're not challenging -- the

20   legal word for it is lascivious exhibition, but you're not

21   challenging that those do amount to child pornography; is

22   that right?  So I need an audible yes on that.

23            THE DEFENDANT:  Yes.

24            MS. WALCKER:  Thank you.  And in making those

25   images, you were attempting to produce and did attempt to

1    produce child pornography; is that right?

2             THE DEFENDANT:  Yes.

3             MS. WALCKER:  And at some point you distributed

4    several of the images you made of Minor B to the wider

5    Internet; is that right?

6             THE DEFENDANT:  E-mail to e-mail.

7             MS. WALCKER:  Over the Internet, sir; is that

8    correct?

9             THE DEFENDANT:  Yes.

10            MS. WALCKER:  And you agree that the images you

11   made were produced using materials that had been mailed,

12   shipped, and transported in and affecting interstate and

13   foreign commerce; is that right?

14            THE DEFENDANT:  Yes.

15            MS. WALCKER:  Now, during February 2020, you

16   understand that law enforcement executed search warrants in

17   your home and from your person; is that right?

18            THE DEFENDANT:  Yes.

19            MS. WALCKER:  They took a number of your

20   electronic devices; correct?

21            THE DEFENDANT:  Yes.

22            MS. WALCKER:  You understand that the devices law

23   enforcement took and searched revealed a substantial child

24   pornography collection; is that correct?

25            THE DEFENDANT:  Yes.

1          MS. WALCKER:  And let me be a little more

2     specific.  You had a child pornography collection; is that

3     right?

4          THE DEFENDANT:  Yes.

5          MS. WALCKER:  And that child pornography

6     collection included thousands of images and videos of child

7     pornography; is that right?

8          THE DEFENDANT:  I had no idea it was that much.

9          MS. WALCKER:  Well, do you have any reason to

10    believe that the Government would not be able to prove that

11    you had that amount of child pornography images on your

12    devices?

13         THE DEFENDANT:  No, I don't have any reason to

14    believe that.

15         MS. WALCKER:  Okay.  So you don't disagree that

16    the search of your devices revealed that information to be

17    true?  Does that sound about right, sir?

18         THE DEFENDANT:  No, that sounds right.  I'm just

19    saying I did not realize it was that much.

20         MS. WALCKER:  Okay.  I think that's fine.  You

21    collected child pornography that was produced by other

22    people, that was made by other people that you downloaded

23    from the Internet; is that right?

24         THE DEFENDANT:  Yes.

25         MS. WALCKER:  And the child pornography collection

1    that you had included images and videos of all sorts of

2    things, including adult men vaginally and anally penetrating

3    prepubescent children; is that right?

4           THE DEFENDANT:  Yes.

5           MS. WALCKER:  You also, among other materials,

6    included adult women and men engaging in sexual contact with

7    children and children engaging in sexual conduct with

8    another; is that right?

9           THE DEFENDANT:  Yes.

10          MS. WALCKER:  And you also possessed

11   sadomasochistic images involving toddlers and children under

12   18.  Did you possess that sort of stuff?

13          THE DEFENDANT:  Sadomasochism, no.  I don't

14   understand where that would be coming from.

15          MS. WALCKER:  Okay.  Well, if you need to speak

16   with your counsel at any point to discuss that, you're

17   welcome to.  But do you have any reason -- any question in

18   your mind that the Government could show that the child

19   pornography collection included that type of material?

20          THE DEFENDANT:  Like I said, the sadomasochism, I

21   have never been interested in that in any regards.

22          MR. TODER:  May we have a minute, please?

23          THE COURT:  You may.  Before you have one,

24   Ms. Walcker, this line of questioning goes to which count of

25   the Indictment?

```
 1              MS. WALCKER:  Your Honor, I guess technically,

 2    because this is production, I don't know that this is

 3    significant.  It was more for the enhance -- the potential

 4    enhancements that may apply, but --

 5              THE COURT:  I see.

 6              MS. WALCKER:  -- but, Your Honor, I'm not sure

 7    that this is necessary for purposes of the counts at issue.

 8              THE COURT:  I agree.

 9              Mr. Toder, do you still need a moment with your

10    client?

11              MR. TODER:  I think so, yeah.

12              THE COURT:  All right.  Fair enough.

13              Ms. Wegner, can you put Mr. Toder and

14    Mr. Roggenbuck in a room together?

15         (Pause)

16              THE COURT:  Just a minute.  We're working on it.

17              MS. WALCKER:  And I'll go ahead and stop sharing

18    my screen because I'm not sure that we need to continue

19    viewing that.  I can pull it up later, Your Honor, if we

20    need to.

21         (Recess taken at 1:53 p.m.)

22                        *   *   *   *   *

23         (1:56 p.m.)

24                        IN OPEN COURT

25                         (VIA ZOOM)
```

1              THE COURT:  Are you ready to go forward,

2      Mr. Roggenbuck?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Mr. Toder, anything for the record?

5              MR. TODER:  Yes, I have something for the record.

6      My client and I had a miscommunication before when we talked

7      about the definition of "sadomasochism."  The way he

8      understood it is such that he, at this juncture, can't admit

9      that there was sadomasochistic behavior, and I don't know

10     what that's going to do to anything, but he can't do that.

11             THE COURT:  Ms. Walcker, do you want to proceed?

12     It does appear this is an issue related to enhancement and

13     not the underlying factual basis of the elements of the

14     crimes charged.

15             MS. WALCKER:  Yes, Your Honor.  We're willing to

16     proceed without that because it is not related to the

17     underlying production counts.  Just practically speaking,

18     because we are doing this by video, I would defer to

19     Your Honor on how to proceed in terms of addressing that in

20     the -- today's proceeding with the plea agreement.

21             THE COURT:  All right.  Let me just -- is it --

22     can you point me in the plea agreement to where it's

23     referenced in the sentencing guideline issue or the

24     sentencing guideline section?

25             MS. WALCKER:  Your Honor, it's only referenced in

1   the Factual Basis section of the plea agreement.  It's not

2   present anywhere else in the agreement.

3            THE COURT:  All right.  With the permission of the

4   parties, then, I'm going to --

5            MS. WALCKER:  Your Honor, I believe it's the last

6   sentence of the second paragraph on page 4, if that helps.

7            THE COURT:  Yep.  I'll strike that last sentence

8   from the plea agreement with the parties' agreement on the

9   record that I do that.

10           Ms. Walcker, is that acceptable to you?

11           MS. WALCKER:  Yes, Your Honor.  Thank you.

12           THE COURT:  And, Mr. Toder?

13           MR. TODER:  Agree.

14           THE COURT:  All right.  And if there's an issue of

15   that at sentencing, we can take it up at that time.

16           You may continue, Ms. Walcker.

17           MS. WALCKER:  Your Honor, I believe that is

18   sufficient for the factual basis.  I have nothing further.

19   Thank you.

20           THE COURT:  Mr. Toder, do you have anything

21   further?

22           MR. TODER:  I do not.

23           THE COURT:  Okay.  Mr. Roggenbuck, are you

24   prepared at this time to enter a plea?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Are you making this plea voluntarily

2    and of your own free will?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Has anyone forced you, coerced you, or

5    done any violence to you or any other person to get you to

6    plead guilty?

7          THE DEFENDANT:  No.

8          THE COURT:  And are you going to plead guilty

9    because you are, in fact, guilty of the crimes charged?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Then I'll ask you, Benjamin

12   Roggenbuck, how you plead to Count 1 of the Indictment,

13   production and attempted production of child pornography.

14   Do you plead guilty or not guilty?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  And as to Count 2 of the Indictment,

17   production and attempted production of child pornography, do

18   you plead guilty or not guilty?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Ms. Walcker, are there any victims of

21   the offense who are present here today who wish to be heard?

22         MS. WALCKER:  No, Your Honor.  Thank you.

23         THE COURT:  And I'd just ask you to let the Court

24   know what you would anticipate at sentencing.

25         I'm going to make a number of findings,

1        Mr. Roggenbuck.  The first is that you are clearly competent

2        and mentally capable of entering an informed plea; that you

3        are aware of the nature of the charge against you, the

4        nature of these proceedings, and the consequences of your

5        plea of guilty.  I find that your plea is knowing,

6        voluntary, and informed and supported by independent facts

7        in the record establishing all of the elements of the

8        offense.  So I am going to accept your plea and find you

9        guilty of Counts 1 and 2 of the Indictment as charged.

10               As I mentioned, what happens next is that a

11        presentence report will be conducted.  That will --

12        Ms. Otepka, are you conducting the report in this case and

13        the investigation?

14               THE PROBATION OFFICER:  Yes, Your Honor.

15               THE COURT:  So Officer Otepka will be the one who

16        is doing the investigation, and that includes an interview

17        of you.  You're required to be interviewed, and your

18        attorney may be present during that interview if you wish.

19               After that report is prepared, you will read it.

20        You can make objections.  Your attorney may make objections

21        and file sentencing papers on your behalf.  The Government

22        may do so as well.  The victims may do so as well or through

23        a victim advocate.  And you may have any letters sent in.

24        I'll read everything that is sent in to me.

25               We'll conduct a sentencing hearing, and I'll

1    impose sentence at that time.  You and your attorney will

2    have a chance to speak at that sentencing hearing.  In the

3    meantime, you're remanded to the custody of the United

4    States Marshal.

5           Is there anything further that you wish to place

6    on the record here today, Ms. Walcker?

7           MS. WALCKER:  No, Your Honor.  Thank you.

8           THE COURT:  Mr. Toder?

9           MR. TODER:  No, Your Honor.  Thank you.

10          THE COURT:  Mr. Roggenbuck, do you have any

11   questions for me at this time?

12          THE DEFENDANT:  No, I do not.

13          THE COURT:  All right.  Then we're going to wait

14   and set a sentencing date until after the presentence report

15   is prepared, and I'll look forward to seeing you at

16   sentencing.  Thank you.

17          We're off the record.

18      (Court adjourned at 2:01 p.m.)

19                         *     *     *

20          I, Erin D. Drost, certify that the foregoing is a

21   correct transcript from the record of proceedings in the

22   above-entitled matter to the best of my ability.

23

24          Certified by:  *s/ Erin D. Drost*

25                          Erin D. Drost, RMR-CRR